IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GERALD H. LOWERY, SR.                                                    PLAINTIFF

v.                                      Civil No. 4:18-cv-04108

WARDEN JEFFIE WALKER, Miller County
Detention Center (MCDC); NURSE
S. KING, Head Nurse MCDC; NURSE
CHELSEA FOSTER, MCDC; NURSE
LONNIE REDFEARN, MCDC; DR.
TIMOTHY REYNOLDS, MCDC;
SHERIFF JACKIE RUNION; SOUTHERN
HEALTH PARTNERS, INC.; and
MILLER COUNTY                                                            DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Gerald H. Lowery, Sr., under 42 U.S.C.

§ 1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Warden Jeffie

Walker and Sheriff Jackie Runion. (ECF No. 35).[1]  Plaintiff has filed two Responses. (ECF No.

47, 50).  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan

O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose

of making a Report and Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"),

Varner Unit, in Grady, Arkansas.  Plaintiff's claims in this action arise from alleged incidents that

occurred while he was incarcerated in the Miller County Detention Center ("MCDC")

---

[1] Defendants Southern Health Partners, Inc., Timothy Reynolds, M.D., Steven King, Chelsey Foster and Loni Redfearn have also filed a Motion for Summary Judgment.  (ECF No. 39).  This motion will be addressed in a separate order. However, the Court will consider the relevant portions of the medical records and other exhibits set forth in (ECF No. 41) and cite to them accordingly in this Report and Recommendation.

Texarkana, Arkansas.

Plaintiff was booked into the custody of the MCDC on December 28, 2017 and transferred to the ADC a year later on December 28, 2018.  (ECF Nos. 37-2, p. 3, 37-7 p. 67).

On December 29, 2017, Plaintiff was screened for medical and mental health issues.  At that time, he consented to treatment by Defendant Southern Health Partners, Inc. – the third-party organization responsible for providing detainees at the MCDC with medical care.  Defendant Foster, a nurse employed by Defendant Southern Health Partners, Inc., performed the screening.  (ECF No. 37-4, pp. 2-6).  At intake, Plaintiff weighed 207 pounds.  As a result of the screening, it was determined that Plaintiff was eligible to receive a night snack due to his diabetes.  In addition, an order was entered to continue Plaintiff's current medications which included Lantus up to 30 units daily and Metformin 1000 mg by mouth twice a day.  (ECF Nos., 41-2, 41-5 p. 5, 41-8 p. 7).  These medications were verbally verified by Wal-Mart pharmacy.  (ECF No. 41-5 p. 5).  Lantus is a long acting form of injectable insulin.  Metformin is an oral diabetes medication.  (ECF No. 41-2, p. 1).

Beginning on December 29, 2017, Plaintiff was administered twice daily blood sugar checks.  (ECF Nos. 41-1 p. 2, 41-5 pp. 31-32).  These blood sugar checks continued until January 18, 2018.  *Id.*

According to the affidavits of Defendants King and Reynolds,[2] on December 31, 2017, Lantus was discontinued by Nurse Practitioner – Steven Foltz.[3]  (ECF Nos. 41-1 p. 2, 41-5 pp. 5-7).  At that point Plaintiff was only taking Metformin for his diabetes.  *Id.*

---

[2] Defendant King is a nurse and Defendant Reynolds is a medical doctor.  These Defendants are employed by Defendant Southern Health Partners, Inc.
[3] Mr. Foltz is not a named defendant in this lawsuit.

On January 2, 2018, blood was collected from Plaintiff to determine his Hemoglobin A1C (Hgb A1c) level. (ECF Nos. 41-2 p. 2, 41-5 p. 8). Hgb A1c is also called glycosylated hemoglobin. (ECF No. 41-2, p. 2). Hgb A1c is used as a diagnostic tool to determine an individual's average blood sugar over the past two to three months. (ECF Nos. 41-2 p. 2, 41-6).

The mathematical formula used to calculate the average blood sugar by Hgb A1c is 28.7 x A1c – 46.7. (ECF Nos. 41-2 p. 2, 41-7). Based on Plaintiff's Hgb A1c result of 6.6, Plaintiff's average blood sugar was 143 milligrams per deciliter (mg/dl) prior to his incarceration in the MCDC. (ECF Nos. 41-2, 41-5 p. 9, 41-7).

From December 31, 2017, until January 18, 2018, Plaintiff's average blood sugar based on twice daily checks was 124 mg/dl. (ECF No. 41-1 p. 2, 41-5 p. 31-32). This is the period in which Plaintiff was receiving only Metformin for his diabetes and twice daily blood sugar checks. *Id.*

On January 18, 2018, Nurse Practitioner Steven Foltz changed Plaintiff's blood sugar checks to weekly. (ECF Nos. 2 p. 2, 41-5 p. 32).

According to Defendant Reynolds' affidavit, given that Plaintiff's blood sugar was well controlled from December 31, 2017, through January 18, 2018, it was medically prudent to change Plaintiff's blood sugar checks to weekly. (ECF No. 2, p. 2).

On February 16, 2018, Plaintiff submitted a medical request stating he did not receive his night snack. In response Defendant King stated, "You are not on insulin. You have been removed from the night snack list. Your blood sugar will still be checked and if it drops to unacceptable levels you will be placed back on the night snack list. (ECF No. 37-3, p. 1).

On March 9, 2018, Plaintiff's blood sugar reading registered "high" on the glucose meter. (ECF Nos. 41-2 p. 2, 41-3, 41-5 p. 10-14). Because of the high reading Plaintiff was transported to Wadley Regional Medical Center ("WRMC") emergency room for evaluation. *Id.* The

WRMC's emergency room physician ordered Plaintiff to be placed on Lantus 10 units at bedtime and ordered that blood sugar checks be performed twice daily. *Id.* Upon his return to the MCDC, Defendant Reynolds implemented the emergency room physician's orders. (ECF Nos. 41-2 p. 3, 41-3 p. 3, 41-5 pp. 5, 32-34).

Plaintiff was transported to the WRMC for blood sugar issues two more times during the next twenty-four hours. (ECF Nos. 41-2 p. 3, 41-5 pp. 15-22). On March 10, 2018, the WRMC's emergency room physician ordered Plaintiff's Lantus dose be increased to 20 units at bedtime, and regular insulin be administered according to a "sliding scale." (ECF Nos. 41-2 p. 3, 41-5 p. 20). The sliding scale method of administration is based on the adjustment of regular insulin doses depending on the current blood sugar reading. (ECF No. 41-2, p. 3). On March 11, 2018, Nurse Practitioner Foltz increased Plaintiff's Lantus to 20 units at bedtime and ordered regular insulin to be administered according to the WRMC's emergency room sliding scale. (ECF Nos. 41-2 p. 3, 41-5 p. 6, 41-8 pp. 11-13). Plaintiff continued to receive these dosages until June 8, 2018, when his Lantus was decreased to 18 units at bedtime. (ECF No. 41-5 p. 44).

On March 28, 2018, Plaintiff was inadvertently administered 20 units of regular insulin rather than his 20 units of Lantus by Defendant Redfearn, a nurse employed by Defendant Southern Health Partners, Inc. (ECF Nos. 41-4 p. 2, 41-5 p. 23). Prior to this injection, Plaintiff's blood sugar was 202 mg/dl. (ECF Nos. 41-4 p. 2, 41-5 p. 36). Defendant Redfearn states in her affidavit, "At no time did I intentionally administer medications to Mr. Lowery that were not prescribed for him." (ECF No. 41-4, p. 2).

Plaintiff states after he was given the wrong medication, he was given bologna sandwiches to eat to keep his blood sugar from going too low. (ECF No. 19, p. 11). Ten minutes after the injection of the incorrect medication Plaintiff's blood sugar was 180 mg/dl. (ECF No. 41-5, 41-5

4

p. 23).  Thirty minutes after the injection Plaintiff's blood sugar was 187 mg/dl.  *Id.*  Even though Plaintiff's blood sugar never reached a critical level he was transported to the WRMC for evaluation.  (ECF No. 41-4, 41-5 pp. 23-26).

On March 30, 2018, Plaintiff sent a request addressed to Defendant Walker requesting a face to face meeting "in regards to the evolution of my medical care in your jail…to address…another trip to the hospital that obviously could have been prevented and certainly could have been life threatening…"  (ECF No. 37-3 p. 2).

On April 3, 2018, Plaintiff submitted a grievance stating:

This grievance is to formally put a complaint against the inconsistencies of the medical applications of the facility and the callous intimidating tactics of Nurse King in regards to the personal treatment here and what he decides versus what the doctors have instructed at the hospital. The lack of access to my own personal information in regards to my treatment in this facility and the fact that although I have 'labeled' with my name medication, I'm still getting someone else's and other infract.

(ECF No. 37-3 p. 3).  The next day, the responding officer forwarded Plaintiff's requests to the appropriate authority.

On May 7, 2018, Plaintiff submitted a grievance stating:

Up was discovered. I was taken to R&D for observation and given 6 bologna sandwichs. Lonnie returned to R&D moments later to inform me that I would be taking yet another preventable trip to thr E.R. as earlier in the month I had taken 3 embarrassing trips to the E.R. handcuffed, chained and shackeled in what was another obviously avoidable debagel in less than a 24 hour period.  The attending physician at the E.R. pointed out several discrepancies including but not limited Lonnie drawing the insulin.

(ECF No. 37-3 p. 6).  In response Defendant King stated, "I have acknowledged receipt of the complaint."  *Id.*

That same day Plaintiff submitted a second grievance stating:

5

Then giving me the syringe without identifying the meds. The immediate adverse effects have been to my eyesight and stopping the dripping at the end of my bladder evacuation. I now have difficulties with my injections as I am extremely apprehensive of taking the wrong shot. I have no clue of future mental, physical or emotional impairments this will have on my quality or longevity of life.

(ECF No. 37-3 p. 7). Again, Defendant King responded stating, "I have acknowledged receipt of the complaint." *Id.*

Plaintiff submitted a third grievance on May 7, 2018 stating:

This grievance has been generated in regards to the 20 units/cc of Humulin fast acting insulin that I was given on the evening of 3-28-18 instead of the slow acting Lantus that should have been administered and the psyical & psychological ramafications that have insued from said trauma. L.VN. Lonnie Redfearn drew up the Humulin in the syringe and handed it to me. I did the injection in my lower abdomen. As the next diabetic prisner was about to take his injection it was at that time the insulin mix.

(ECF No. 37-3 p. 8). Defendant King again acknowledged receipt of the complaint. *Id.*

On May 14, 2018, Plaintiff was accused of theft after an excessive amount of alcohol pads were found in his property during a shake down. Plaintiff appeared at his hearing and accepted the sanction that was offered to him – 30 days loss of commissary. (ECF No. 37-5 pp. 1-6).

On June 5, 2018, Plaintiff submitted a medical request stating, "I need the nurse to evaluate the condition of my lower left jaw and upper righ[t] molar tooth to direct me on what needs to happen as it has swollen and is sore also making it hard to chew. Thank you." (ECF No. 37-3 p. 33). The record reflects this request was read by Defendant Foster, a nurse employed by Defendant Southern Health Partners, Inc. *Id.* Later that same day, Plaintiff submitted another medical request stating, "The medicine that Nurse King gave me for pain has worn off and I was suppose to start on an antibiotic this evening so I can have a tooth removed Saturday…My pain is an excruciating 10…" (ECF No. 37-3 p. 34).

During evening pill call on June 5, 2018, Plaintiff was cited for disrespectful behavior toward an MCDC staff member when he allegedly called a jailer "jackass". Although he denied saying the word, Plaintiff appeared at his disciplinary hearing and accepted the sanction of 15 days in lockdown. (ECF No. 37-5 pp. 8-13).

Between June 6 and June 9, 2018, Plaintiff did not make any requests, either verbal or written, for pain medication. (ECF No. 41-1 p. 2, 41-3, p. 2). On June 9, 2018, Plaintiff was prescribed 800 mg Ibuprofen twice daily for seven days after a tooth extraction. (ECF Nos. 41-1 p. 2, 41-5 p. 29). Plaintiff continued to receive this medication twice daily from June 10, 2018, through June 16, 2018. *Id.*

On June 30, 2018, Plaintiff submitted a medical request stating:

Nurse Chelsea just threatened to put me in a turtle suit because I'm trying to harm myself…my rest was broken last night do to some people that did not go to sleep until early this morning. I'm always up early and on time for pill call. I'm certain this is another unprovoked attack to entice a respond for retaliation. I've been here 7 months, she said this was the 2nd time. I don't remember the 1st time but twice in 7 months wow."

(ECF No. 37-3 p. 10). In response Defendant King stated:

Diabetics have, in the past, used refusals for their medication as self-harm. You are on 3 long term medications and receive two different insulins Mr. Lowery. We take any diabetic medication refusal seriously at Miller County Detention Center. Your safety, and the safety of those around you, are our top priority. Any expression/sign of self-harm is taken seriously and dictates appropriate actions by staff.

*Id.*

On July 18, 2018, Plaintiff filed his Complaint. (ECF No. 1).

On July 26, 2019, Plaintiff submitted a grievance stating:

As a plaintiff in a case against a facility in which I'm incarcerated, I find it uncomfortable and unprofessional, while checking my blood sugar @ or about

11:20A.M. to be addressed, laughed at, and reassured by Nurse King that the case
I filed would be thrown out and not to take it personally. I'm afraid to and have no
idea how to respond without the presence of legal representation.

(ECF No. 37-3 p. 14). The responding officer stated, "We take allegations such as the one you

have made very seriously…disciplinary action will be taken against you if it is found that you have

made false allegations. We also want to assure you that if necessary, appropriate measures will be

taken to address your concerns." *Id.*

On July 27, 2019, Plaintiff submitted a grievance stating:

It is my prayer that somehow Nurse King could curb his intimidating and taunting
tactics in regards to staying in the parameters of his obligations and duties
concerning any interactions we may incur throughout the duration of my
incarceration under his medical guidance as this morning once again he was
intimidating and condescending in front of fellow prisoners that unlike in the
infirmary yesterday, are willing and ready to serve as witnesses to the behavior @
6:30 pill call please view tapes.

(ECF No. 37-3 p. 15). Three days later Plaintiff's request was forwarded to the appropriate

authority. *Id.*

On July 27, 2018, Plaintiff submitted a second grievance stating:

Nurse King has harassed me again in the infirmary and it carried on into the
hallway. This was at approximately 11:30A.M. with the same guard that it
happened in front of yesterday C.O. Moore. I've been told that personel has to stick
together so I don't know if Moore will admit to any of yesterday but today was
partially played out in the hallway and if mics are available that will render it hard
to deny in spite of the fraternal bond. Can someone please help.

(ECF No. 37-3 p. 16). Three days later the responding officer stated, "Your request is ambiguous

and contains no identifiable request or complaint. We suggest that you be more specific so that

we may address whatever is concerning you." *Id.*

On September 13, 2018, Plaintiff was directed to file an Amended Complaint in response

to a motion to dismiss filed by Defendants Walker and Runion in which they argued Plaintiff had failed to allege any facts supporting claims against them.  (ECF No. 16).

On September 21, 2019, Plaintiff filed a Request to the Grievance officer stating:

The diabetic breakfast trays served this morning consisted of left over spoiled food. When we reported it to the CO, he radioed the kitchen and she said it was just the smell. The servers said they got rid of leftovers. Everyone else in the pod had grits as a main, with sausage, biscuits, and gravy on the side cooked today. Why would be served tainted foods?

(ECF No. 37-3 p. 17).  On September 24, 2018, Admin. G. Officer responded stating the request was forwarded to the appropriate authority and the grievance was reassigned to the kitchen.  *Id.*

On September 25, 2018, Plaintiff submitted a grievance stating, "This morning my/our diabetic trays were minus the oatmeal.  This afternoon the lunch trays were minus a side.  The affirmation of a positive caloric intake in lieu of the 5 meal daily recommendation is imperative in order to stabilize any similitude of a healthy scenario for diabetics in this facility."  (ECF No. 37-3 p. 18).  On September 27, 2018, The Admin G. Officer forwarded the request to the appropriate authority and reassigned the request to the kitchen.  *Id.*

On September 26, 2018, Plaintiff submitted a grievance stating, "This grievance is to address the lack of diabetic diet. I have talked directly to numerous people and nothing happens. I've been on a bad diet since 12-28-18 and it's affecting me in an adverse way."  (ECF No. 37-3 p. 19).  The following day Plaintiff's request was forwarded to the appropriate authority.  *Id.*

On October 3, 2018, Plaintiff filed his Amended Complaint.  (ECF No. 19).

At all times relevant, Defendant Southern Health Partners, Inc. was under contract with Miller County, Arkansas, to provide healthcare services to inmates housed at the MCDC.  (ECF Nos. 41-1, 41-2, 41-3, 41-4).  At all times relevant, Defendants Reynolds, King, Foster and

Redfearn were employees or agents of Defendant Southern Health Partners, Inc.  *Id.*

At all times relevant Defendant Walker was the Warden at the MCDC and Defendant Runion was the Sheriff of Miller County.  (ECF Nos. 36 p. 3, 37-1 p. 1).

On March 15, 2019, Plaintiff gave his sworn testimony in a deposition.  (ECF No. 37-7 pp. 1-103).

## II. POLICIES OF THE MCDC

### A.  Complaint and Grievance Procedure

It is the policy of the MCDC to protect and promote the safety and Constitutional rights of inmates and to seek a balance between the expression of individual rights and the preservation of facility order and security.  (ECF No. 37-1 p. 2, 37-5 p. 3).  Inmate complaints are first submitted through a KIOSK.  Inmate "requests/concerns/complaints" are reviewed daily (excluding weekends and holidays) and sent to the appropriate person to address.  Complaints are forwarded to the lowest appropriate supervisory level to address and respond.  (ECF No. 37-6, p. 6).  The supervisor addressing the complaint is required to deliver a response to the inmate.

Inmates who are unable to resolve a complaint through the procedure using the KIOSK may then participate in the MCDC's grievance procedure.  The policy provides that the "Jail Warden or designee" is responsible for the coordination and management of grievance procedures. (ECF No. 37-6 p. 6).  Grievances are to be routed to the Warden or Risk Management ("RM") Officer.  Within thirty (30) calendar days of receipt of a grievance, the grievance shall be reviewed and if applicable thoroughly investigated.  The investigation results are then provided to the Jail Warden or RM Officer, in writing.  The Jail Warden may extend response time periods for a reasonable period if necessary.  Any extension is to be communicated in writing to the complainant/inmate.  *Id.* at p. 7.

Inmates at the MCDC are required to follow a specific procedure to submit a grievance. (ECF No. 37-6 pp. 6-10). First, a grievance must be submitted on a Request for Administrative Remedy Form, jail form 09.01A, from a shift officer or supervisor. Grievances are assigned a case number, an investigation is conducted, and a "sustained or not sustained finding" is rendered. The form/grievance is then forwarded to a Lieutenant or Captain for distribution. *Id.* at 8. The Lieutenant or Captain then makes a copy of the form, acknowledged by the Jail Warden or RM Officer for the inmate's classification file. The Lieutenant or Captain then completes the jail form MCSO "Inmate Acknowledgment for Grievance". The original Request for Administrative Remedy Form [grievance] is then delivered to the inmate. The inmate is then required to acknowledge receipt in writing on the "Inmate Acknowledgement for Grievance" form. *Id.* If the grievance is determined to be an allegation of misconduct against an MCDC employee, the allegations are investigated by the appropriate authority in accordance with agency policy and at the discretion of the Jail Warden. An inmate may appeal the result of the grievance findings to the Jail Warden by stating they wish to "APPEAL THE FINDINGS ON THE 'INMATE ACKNOWLEGEMENT FORM'". *Id.* Following the disposition of the appeal, "the Request for Administrative Remedy Form shall be returned to the RM Officer and the case number closed out. The form is then forwarded to the Lieutenant or Captain for distribution, copies are made for the inmate's classification file, and then delivered to the inmate. *Id.* at p. 9.

### B. Medical Care Policy

It is the policy of the MCDC to maintain the health of each inmate at the level of his/her status at the time of incarceration, unless any illness or injury requires immediate attention or is deemed to be life threatening or potentially life threatening. (ECF No. 37-6 p. 10). At all relevant times, the MCDC contracted with Defendant Southern Health Partners, Inc. to provide medical

care to the inmates.  In addition, Defendant Walker states under oath:

> All matters of judgment regarding health services are made within the sole province of the contract medical staff.  No employee of the Miller County Detention Center is authorized to make non-emergency medical decisions on behalf of any inmate. No one in the Sheriff's Office makes any decision as to whether or not [to] provide a particular medication, diagnostic testing, or medical treatment based on the cost of the medication, testing, or treatment.  All decisions regarding medications, medical testing, or medical treatment are left to the professional medical judgment of the physician at the detention facility.  Miller County Detention Center has no policy, practice, or custom that requires the physician to consult with any employee of the Miller County Detention Center before prescribing any medication, testing, or treatment.

(ECF No. 37-1 p. 2).

### C.  Meal Policy

It is the policy of the MCDC to provide inmates with three (3) nutritious meals per day that are developed by a certified dietician, prepared under sanitary conditions, use established dietary standards, at a reasonable cost, and in such a manner that meets established government health and safety codes.  (ECF No. 37-6 p. 55).  MCDC has a Food Sergeant who is responsible for planning and providing medically prescribed meals.

The Recommended Dietary Allowances of the National Research Council – Food and Nutrition Board serves as the standard for preparation of the menus served at the MCDC.  Menus, including modified diets, are planned not less than 28 days in advance and certified by a licensed dietician/nutritionist through the Group Purchasing Agency in collaboration with SYSCO – the MCDC's food source vendor.  Any necessary substitutions in the meals served are required to be noted and must be of equal nutritional value.  (ECF No. 37-6 p. 57).

Medical diets shall be prepared and served when directed by the agency contracted health authority.  (ECF No. 37-6 p. 57).  Special modified diets, as prescribed by appropriate medical and/or dental personnel, shall be available but must be specific and complete and entered into the

Jail Management System by medical staff. *Id.* The Food Service Sergeant or designee shall review the medical diet prescriptions in the Jail Management System and complete a listing of all inmates on a Medical Diet prior to each meal preparation. Medical Diets must be as simple as possible and should conform as closely as possible to the foods served to other inmates. *Id.*

The MCDC's meal policy also provides that under no circumstances shall food be withheld, or the standard menu varied as a disciplinary measure or as a reward for good behavior or work for an individual inmate. However, an inmate may be placed on a special management meal program approved by a physician or qualified health authority. *Id.*

### III. PROCEDURAL BACKGROUND

Plaintiff filed his verified Complaint on July 18, 2018, against Defendants Walker, King, Foster, Redfearn, Reynolds, Runion, and Southern Health Partners, Inc. (ECF No. 1). In response to this Court's order, Plaintiff filed an Amended Complaint on October 3, 2018, to allege facts to support his claims against Defendants Walker and Runion. (ECF No. 19). He is suing Defendants in both their personal and official capacities and is seeking compensatory and punitive damages. *Id.* at p. 16). He also asks for "a practical diet to enhance proper medical care at the facility and institute a personal program for insulin that inmates may more easily & safely accentuate/acclaimate." *Id.*

In Claim One, Plaintiff identifies Defendants Miller County, Walker and Runion in addition to the Defendants King, Foster, Redfearn, Reynolds, and Southern Health Partners, Inc. ("Medical Defendants") as the responsible parties and then describes the events of March 9 - 10, 2018, when he was taken to the local emergency room on three occasions because of irregularities with his blood sugar. (ECF No. 19 p. 6). Plaintiff also states, "Retaliation plays a huge part here. I went to infirmary on 6-5-18 with a toothache and got pills for pain and infection that morning.

When I went back that evening I had words with a C.O.   I was put in the hole until 6-9-18, when the dentist came without further meds until after the tooth was pulled…"  (ECF No. 19 p. 8). Plaintiff also claims he was denied adequate medical care because he was never seen by a doctor at the MCDC, he was taken off his diabetic medication, and his blood sugar checks were reduced from twice daily to once a week.  *Id.*

Plaintiff's only allegation specific to Defendants Walker and Runion in Claim One states, "[t]he passive cooperation of the Sheriff and Warden allows Nurse King the grandious authority on action or inaction in the 'County' Jail that surely has guidelines for adequate medical attention under the care of Southern Health partners, Inc., in which the nursing staff operates." *Id.* at p. 8. As for his official capacity claim under Claim One, Plaintiff describes the custom or policy he believed caused a violation of his constitutional rights as, "…the lack of attention to my very apparent worsening numbers on the glucose meter and failing to act or respond." *Id.* at p. 10.

In Claim Two, Plaintiff names Defendants Miller County, Walker and Runion along with the Medical Defendants and describes the claim as "Negligent application & Care-Deliberate Indifference." (ECF No. 19 p. 10).   Plaintiff goes on to describe how he was given the wrong dose of insulin by Defendant Redfearn on March 28, 2018. *Id.* at pp. 10-12.  Other than listing them as responsible parties, Plaintiff does not specifically mention Defendants Miller County, Walker or Runion in this claim.  Plaintiff also briefly mentions retaliation and states, "the combination of no meds initially to not enough or to much, the wrong kinds and wrong or inadequate diet over a 9 month period with the intimidating and retaliatory tactics applied has not only affected my physical body …but has torn me down mentally and emotionally." *Id.* at p. 12. For his official capacity claim in Claim Two, Plaintiff describes the custom or policy that he believed caused a violation of his constitutional rights as, "…the lack of adherence to any

14

established policy is the direct violation to what could be life threatening in this scenario." *Id.* at

p. 13.

For Claim Three, Plaintiff identifies Defendants Miller County, Walker and Runion as the

responsible parties and specifically states:

> …myself and many other diabetics have inquired and complained about the lack of a diabetic diet at the MCDC. The kitchen gets request, the Warden, Captain, Lieutenant, Sargent, and CO's all have been approached on this matter to no avail. The difference in a regular prepared food tray and diabetic tray are few. The brown regular tray has deeper compartments then the tan colored diabetic tray and the comparison in what goes on the tray is minimal. Regular trays have a cookie at lunch and a piece of cake at dinner. Diabetics get applesauce on lunch and dinner trays. The main entree is always the same. At breakfast the grits and oatmeal don't have added sugar. Over 90% of meats are processed. All 100% of bread is white and we eat it daily. Potatoes are on our tray sometimes twice daily but beans are more prevalent than anything else. Unfortunately, I have been here since 12-28-17 9 months and that's a longer than average stay at this county jail and give me more encounters with the foods not recommended for a healthy diabetic diet. Retaliation is executed on a regular basis to the point you are afraid to complain because you don't know if the trays will be short [or] you be thrown in the hole. On a visit to the infirmary, I asked Nurse Loni Redfearn about the diet for diabetics in the jail and she said they 'Southern Health Partners Inc.' actually have us on a special diet in the system but can't force the jail to follow it because they don't have the authority to enforce jail staff to follow it. An example of swift retaliation is the grievance filed on 9-26-18 #3,426,558 in reference to the diabetic diet. They took bologna from our trays and replaced it with peanut butter which runs my blood sugar levels high, fast so I will take more shots now since I'm served bologna at least one time per day and most often twice daily. Bologna is the most served meat throughout the jail to everyone. A processed meat that not recommended for me, now on most days it will be no meat except breakfast. Still white bread.

(ECF No. 19 pp. 13-15). For his official capacity claim for Claim Three, Plaintiff describes the

custom or policy which he believes caused a violation of his constitutional rights as "the lack of

effort on behalf of the Sheriff or Warden to address the real need for the growing number of

diabetic need in diet and the lack of a municipal mandate concerning a diabetic diet in their jail."

*Id.* at p. 16.

On May 8, 2019, Defendants Miller County, Walker and Runion filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) there is no proof of any personal involvement by Defendants; 2) Plaintiff failed to exhaust his administrative remedies; 3) negligence does not amount to a constitutional violation; 4) Plaintiff was not denied an adequate diet; 5) there is no evidence of retaliation by Defendants; 6) Defendants are entitled to qualified immunity; and 7) there is no basis for official capacity/county liability.  (ECF No. 35).

On July19, 2019, Plaintiff filed a Response in opposition to Defendants' motion stating Defendants only provided the Court with a partial transcript of his deposition, Defendants falsely claim he failed to exhaust administrative remedies, there is vicarious liability "though the correction officers", and "diet was not congruent with diet recommended by Dr. Joseph Nelson my personal doctor before being incarcerated.[4]  (ECF No. 47).

On July 22, 2019, Plaintiff filed a verified "Response to Undisputed Facts 37-40".  (ECF No. 50).  In this Response Plaintiff lists a numeral taken from Defendant Walker and Runion's Statement of Facts (ECF No. 37) and makes the following notations: 19. Question as to why Martel McCerary & myself use same insulin labeled for me was simply marked as not a sick call and never addressed, Docu. 37-3 page ID 286 grievance 3,066,572; 22. No follow-up on appropriate measures on concerns; 23. Medical staff responding to grievance on them; 26. No follow up on appropriate measure on harassment; 27. Not addressed at all; 28. Grievance on 3rd King harassment marked ambiguous; 69. A wrong dose of incorrect insulin; 88. Page 42 line 19: She called & found out their opinion; 90. Dr. Reynolds never gave personal examination; 144. Page 73 Line 24-25

---

[4] Plaintiff's Response is not verified.  In addition, Plaintiff states in his Response, "The lockdowns in Max A and Max E are documented proof/evidence of retaliation in conjunction with the testimony of witnesses." (ECF No. 47). p. 3).  Plaintiff did not include this claim in his Amended Complaint and therefore it is not properly before the Court.

Loni acknowledged diet in computer from S.H.P. Miller county does not use; 147. They did not add sugar to oatmeal; 162. Did not remember on day of deposition with two attorneys confusing my words. Met with Warden, Captain & Lt. on 3-30-18; 163. Did not have trial on Christmas Day; 184. Not true; 206. Not true.  (ECF No. 50 p. 2).

Numbers 22-28 relate to grievances Plaintiff filed which he contends were not responded to appropriately or not responded to at all.  In Numbers 69 - 206 Plaintiff appears to be attempting to explain his deposition testimony.

## IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

17

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

### A. Denial of Medical Care

Plaintiff alleges he was denied medical care when one of his medications for diabetes was discontinued for a few weeks, his blood sugar checks were reduced to once a week, and he was not provided pain medication for several days. He also claims Defendant Redfearn – a nurse employed by Defendant Southern Health Partners, Inc., was negligent when she administered the wrong insulin on one occasion.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more

even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).  A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).  However, intentionally denying or delaying access to medical care may constitute deliberate indifference.  *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

Defendants do not dispute Plaintiff's medical issues relating to his diabetes or his dental care are serious medical needs.  Therefore, for purposes of this Report and Recommendation the Court will assume Plaintiff's conditions as described in his Amended Complaint are serious medical needs.  However, Defendants argue they had no personal involvement in the medical or dental care provided to Plaintiff and consequently, were not deliberately indifferent to those needs.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which if proven true, would demonstrate the named defendants violated the plaintiff's federal constitutional rights while acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Although federal courts must view pro se pleadings liberally, such pleadings may not be merely conclusory.  The complaint must allege facts, which if true, state a claim as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

At the time of the events in question, Defendant Walker was the Warden at the MCDC and Defendant Runion was the Sheriff of Miller County.  General responsibility for supervising a

detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

Plaintiff does not dispute Defendant Southern Health Partners, Inc. is the entity who was under contract with the MCDC to provide medical services at the MCDC during his incarceration in 2018 nor does he dispute all matters of judgment regarding health services were made within the sole province of the contract medical staff. Although Plaintiff lists Defendants Miller County, Walker and Runion in Claims One and Two of his Amended Complaint as parties who denied him adequate medical care, there is no summary judgment evidence to establish these Defendants had any responsibility, control or personal involvement in discontinuing his medication, reducing his blood sugar checks, administering the wrong medication, or refusing to provide him with pain medication. Plaintiff simply describes Defendants Walker and Runion's actions as "passive cooperation allows Nurse King the grandious authority on action or inaction" in the MCDC." This is insufficient as a matter of law.

Accordingly, Defendants Miller County, Walker and Runion are entitled to summary judgment on Plaintiff's individual capacity claims based on denial of medical care.

### B. Diabetic Diet

Plaintiff alleges Defendants Miller County, Walker and Runion violated his constitutional rights by failing to provide a proper diabetic diet for him during his incarceration in the MCDC.

20

The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980) (prisoners are guaranteed a reasonable adequate diet). Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment. *Burgin v. Nix*, 899 F.2d 733, 734-735 (8th Cir. 1990). Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

In this case, Plaintiff states his "free world" doctor suggested that he avoid some of the foods that were served to him while he was in the MCDC (processed meat and white bread). Other than his lack of satisfaction with the food items, there is no evidence the diet Plaintiff was provided was in any way detrimental to his health. At intake, Plaintiff weighed approximately 207 pounds. According to the ADC, Plaintiff weighed 227 pounds when he was received at the ADC in December of 2018. Other than his disagreement with the menu choices, Plaintiff only alleged the diet "could have" been the cause of some of the issues related to his diabetes – difficulty urinating, low back pain, and "floaties" in his eyes. Plaintiff has not provided any summary judgment evidence to substantiate his claim that the meals he was served were inadequate to maintain his health.

Accordingly, Defendants Miller County, Walker and Runion are entitled to summary judgment on Plaintiff's individual capacity claims he was denied an adequate diet.

21

### C. Retaliation

Although not set forth in a separate claim in his Amended Complaint, Plaintiff mentions the word "retaliation" in Claim One stating, "Retaliation plays a huge part here. I went to infirmary on 6-5-18 with a toothache and got pills for pain and infection that morning.  When I went back that evening I had words with a C.O.   I was put in the hole until 6-9-18, when the dentist came without further meds until after the tooth was pulled…"  (ECF No. 19 p. 8).  He also states, "inadequate diet over a 9 month period with the intimidating and retaliatory tactics applied has not only affected my physical body in many adverse ways, but has torn me down mentally and emotionally." *Id.* at p. 12.

Under Claim Three, Plaintiff alleges Defendants Walker and Runion failed to provide an adequate diabetic diet and they "retaliated" against him "on a regular basis to the point you are afraid to complain because you don't know if the trays will be short of you be thrown in the hole…" Plaintiff goes on to describe where bologna is taken "from our trays and replaced it with peanut butter which runs my blood sugar levels high, fast so I will take more shots now…" *Id.* at p. 15. Plaintiff also mentions a grievance he filed on September 26, 2018, concerning the inadequate diet for diabetics.[5]

Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)).  The retaliatory conduct itself need not be a constitutional violation to be

---

[5] The Court is not convinced Plaintiff administratively exhausted his claims concerning his inadequate diet because the record indicates several of his grievances were filed within a week or two of when he filed his Amended Complaint. However, for purposes of this Report and Recommendation the Court will assume, *arguendo*, that his claims were exhausted.

actionable.  Additionally, there is no independent injury requirement when retaliatory conduct is involved.  *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994).  To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action.  *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Retaliation claims fail "if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule."  *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). Therefore, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation."  *Id.*  "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker."  *Id.* at 831.

The Eighth Circuit has reviewed and upheld the dismissal of a plaintiff's complaint that alleged retaliation for filing grievances.  In *Orebaugh v. Caspari*, 910 F.2d 526 (8th Cir. 1990), the Court determined although the plaintiff claimed he was disciplined in retaliation for filing a grievance, the claim failed because the plaintiff violated the prison's rules for a few different incidents, including one where the plaintiff got into a scuffle with another inmate.  The Court found "[o]ne officer's testimony was sufficient to constitute some evidence" the plaintiff violated the prison's rules by scuffling with another inmate.  *Id.*

Here, Plaintiff's claim he was placed in the "hole" for filing grievances is contrary to the facts.  On June 5, 2018, Plaintiff was cited for disrespectful behavior for allegedly calling a jailer

"jackass".  Although he denied saying the word, Plaintiff appeared at his disciplinary hearing and accepted the sanction of 15 days lockdown.   The summary judgment record establishes the disciplinary action taken against Plaintiff resulted from Plaintiff's own misconduct and violation of the MCDC's rules.  Accordingly, Plaintiff's claim for retaliation set forth under Claim One of the Amended Complaint fails as a matter of law.

Plaintiff's claim he was retaliated against for filing grievances concerning his meals when Defendants replaced his bologna with peanut butter also fails.  Although, there is no question Plaintiff engaged in a protected activity when he submitted the grievances, he has not presented any summary judgment evidence to support his retaliation claims.  *See Meuir v. Greene County Jail Employees.,* 487 F.3d 1115, 1119 (8th Cir. 2007) ("Merely alleging that an act was retaliatory is insufficient.").  In fact, during his deposition when he was asked the question "Did Sheriff Runyon [sic] or Warden Walker ever retaliate against you in any way? Plaintiff responded, "Not personally."

Accordingly, Plaintiff's individual capacity claims for retaliation fail as a matter of law and Defendants Miller County, Walker and Runion should be granted summary judgment on these claims.

### D.  Official Capacity Claims

Plaintiff also sues Defendants Miller County, Walker and Runion in their official capacity.  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010).   In this case, Plaintiff's official capacity claims against Defendants Walker and Runion are treated as claims against Miller County.  *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff describes his official capacity claims under Claim One as "the lack of attention to my very apparent worsening numbers on the glucose meter and failing to act or respond. In Claim Two he describes the basis of his official capacity claim as "lack of adherence to any established policy is the direct violation to what could be life threatened in this scenario." Under Claim Three, Plaintiff describes the official capacity claim as "the lack of effort on behalf of Sheriff or Warden to address the real need for the growing number of diabetic need in diet and the lack of a municipal mandate concerning a diabetic diet in their jail."

The summary judgment record establishes Miller County had detailed policies and procedures in place regarding medical care and the preparation and serving of nutritional meals. Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Miller County that contributed to the alleged violation of Plaintiff's constitutional rights. His allegations that Defendants failed to adhere to the policies do not state a constitutional claim. *Walton v. Dawson*, 752 F.3d 1109 (8th Cir. 2014); *Edwards v. Baer*, 863 F.3d 606, 608 (8th Cir. 1988).

Likewise, Plaintiff's other descriptions of his official capacity claims simply repeat in part his individual capacity claims and do not identify any policy or custom of Miller County.

Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law. [6]

## VI. CONCLUSION

For the reasons stated above, I recommend Defendants Miller County, Walker and Runion's Motion for Summary Judgment (ECF No. 35) be **GRANTED.** I recommend all individual and official capacity claims against these Defendants be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 30th day of September 2019.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[6] Because the Court finds Defendants Miller County, Walker and Runion did not violate Plaintiff's constitutional rights, it is not necessary to address the issue of qualified immunity.