IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GERALD H. LOWERY, SR.                                                        PLAINTIFF

v.                                    Civil No. 4:18-cv-04108

WARDEN JEFFIE WALKER, Miller County
Detention Center (MCDC); NURSE
S. KING, Head Nurse MCDC; NURSE
CHELSEA FOSTER, MCDC; NURSE
LONNIE REDFEARN, MCDC; DR.
TIMOTHY REYNOLDS, MCDC;
SHERIFF JACKIE RUNION; SOUTHERN
HEALTH PARTNERS, INC.; and
MILLER COUNTY                                                               DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Gerald H. Lowery, Sr., under 42 U.S.C.

§ 1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Southern Health

Partners, Inc., Timothy Reynolds, M.D., Steven King, Chelsey Foster,[1] and Loni Redfearn. (ECF

No. 41).[2]  Plaintiff has filed two Responses. (ECF No. 48, 50).  Pursuant to the provisions of 28

U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District

Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"),

---

[1] Chelsey Foster is incorrectly referred to as "Chelsea" in the case caption.
[2] Defendants Warden Jeffie Walker and Sheriff Jackie Runion also filed a Motion for Summary Judgment. (ECF No. 35).  This motion has been addressed in a separate order recommending dismissal of all claims against Defendants Walker and Runion.  (ECF No. 55).  The Court will consider the relevant portions of the medical records and other exhibits set forth in (ECF No. 37) filed by these Defendants and cite to them as necessary in this Report and Recommendation.

Varner Unit, in Grady, Arkansas.  Plaintiff's claims in this action arise from alleged incidents that occurred while he was incarcerated in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.

Plaintiff was booked into the custody of the MCDC on December 28, 2017 and transferred to the ADC on January 7, 2019.  (ECF No. 41-8 p. 7).

On December 29, 2017, Plaintiff was screened for medical and mental health issues.  At that time, he consented to treatment by Defendant Southern Health Partners, Inc. – the third-party organization responsible for providing detainees at the MCDC with medical care.  Defendant Foster, a nurse employed by Defendant Southern Health Partners, Inc., performed the screening. (ECF No. 37-4, pp. 2-6).  As a result of the screening, it was determined that Plaintiff was eligible to receive a night snack due to his diabetes.  In addition, an order was entered to continue Plaintiff's current medications which included Lantus up to 30 units daily and Metformin 1000 mg by mouth twice a day.  (ECF Nos., 41-2, 41-5 p. 5, 41-8 p. 7).  These medications were verbally verified by Wal-Mart pharmacy.  (ECF No. 41-5 p. 5).  Lantus is a long acting form of injectable insulin. Metformin is an oral diabetes medication.  (ECF No. 41-2, p. 1).

Beginning on December 29, 2017, Plaintiff was administered twice daily blood sugar checks.  (ECF Nos. 41-1 p. 2, 41-5 pp. 31-32).  These blood sugar checks continued until January 18, 2018.  *Id.*

According to the affidavits of Defendants King and Reynolds,[3] on December 31, 2017, Lantus was discontinued by Nurse Practitioner – Steven Foltz.[4]  (ECF Nos. 41-1 p. 2, 41-5 pp. 5-

---

[3] Defendant King is a nurse and Defendant Reynolds is a medical doctor.  These Defendants are employed by Defendant Southern Health Partners, Inc.

[4] Mr. Foltz is not a named defendant in this lawsuit. It is not clear from the record if Foltz is employed by Defendant Southern Health Partners, Inc. or Defendant Miller County.

7).  At that point Plaintiff was only taking Metformin for his diabetes.  *Id.*

On January 2, 2018, blood was collected from Plaintiff to determine his Hemoglobin A1C (Hbg A1c) level.  (ECF Nos. 41-2 p. 2, 41-5 p. 8).  Hgb A1c is also called glycosylated hemoglobin.  (ECF No. 41-2, p. 2).  Hgb A1c is used as a diagnostic tool to determine an individual's average blood sugar over the past two to three months.  (ECF Nos. 41-2 p. 2, 41-6).

The mathematical formula used to calculate the average blood sugar by Hgb A1c is 28.7 x A1c – 46.7.  (ECF Nos. 41-2 p. 2, 41-7).  Based on Plaintiff's Hgb A1c result of 6.6, Plaintiff's average blood sugar was 143 milligrams per deciliter (mg/dl) prior to his incarceration in the MCDC.  (ECF Nos. 41-2, 41-5 p. 9, 41-7).

From December 31, 2017, until January 18, 2018, Plaintiff's average blood sugar based on twice daily checks was 124 mg/dl.  (ECF No. 41-1 p. 2, 41-5 p. 31-32).  This is the period in which Plaintiff was receiving only Metformin for his diabetes and twice daily blood sugar checks.  *Id.*

On January 18, 2018, Nurse Practitioner Steven Foltz changed Plaintiff's blood sugar checks to weekly.  (ECF Nos. 2 p. 2, 41-5 p. 32).  Nurse Foltz monitored the results of the weekly blood checks and signed off on the results each week.  (ECF No. 41-5 p. 32).

According to Defendant Reynolds' affidavit, given that Plaintiff's blood sugar was well controlled from December 31, 2017, through January 18, 2018, it was medically prudent to change Plaintiff's blood sugar checks to weekly and discontinue his dosage of Lantus.  (ECF No. 2, p. 2).

On February 16, 2018, Plaintiff submitted a medical request stating he did not receive his night snack.  In response Defendant King stated, "You are not on insulin.  You have been removed from the night snack list.  Your blood sugar will still be checked and if it drops to unacceptable levels you will be placed back on the night snack list.  (ECF No. 37-3, p. 1).

On March 9, 2018, Plaintiff's blood sugar reading registered "high" on the glucose meter.

3

(ECF Nos. 41-2 p. 2, 41-3, 41-5 p. 10-14).  Because of the high reading Plaintiff was transported to Wadley Regional Medical Center ("WRMC") emergency room for evaluation.  *Id.*  The WRMC's emergency room physician ordered Plaintiff to be placed on Lantus 10 units at bedtime and ordered that blood sugar checks be performed twice daily.  *Id.*  Upon his return to the MCDC, Defendant Reynolds implemented the emergency room physician's orders.  (ECF Nos. 41-2 p. 3, 41-3 p. 3, 41-5 pp. 5, 32-34).

Plaintiff was transported to the WRMC for blood sugar issues two more times during the next twenty-four hours.  (ECF Nos. 41-2 p. 3, 41-5 pp. 15-22).  On March 10, 2018, the WRMC's emergency room physician ordered Plaintiff's Lantus dose be increased to 20 units at bedtime, and regular insulin be administered according to a "sliding scale."  (ECF Nos. 41-2 p. 3, 41-5 p. 20).  The sliding scale method of administration is based on the adjustment of regular insulin doses depending on the current blood sugar reading.  (ECF No. 41-2, p. 3).  On March 11, 2018, Nurse Practitioner Foltz increased Plaintiff's Lantus to 20 units at bedtime and ordered regular insulin to be administered according to the WRMC's emergency room sliding scale.  (ECF Nos. 41-2 p. 3, 41-5 p. 6, 41-8 pp. 11-13).  Plaintiff continued to receive these dosages until June 8, 2018, when his Lantus was decreased to 18 units at bedtime.  (ECF No. 41-5 p. 44).

On March 28, 2018, Plaintiff was inadvertently administered 20 units of regular insulin rather than his 20 units of Lantus by Defendant Redfearn, a nurse employed by Defendant Southern Health Partners, Inc.  (ECF Nos. 41-4 p. 2, 41-5 p. 23).  Prior to this injection, Plaintiff's blood sugar was 202 mg/dl.  (ECF Nos. 41-4 p. 2, 41-5 p. 36).  Defendant Redfearn states in her affidavit, "At no time did I intentionally administer medications to Mr. Lowery that were not prescribed for him."  (ECF No. 41-4, p. 2).  Plaintiff states he believes this incident was negligence.  (ECF No. 41-8 pp. 14-15, 27).

4

Plaintiff states after he was given the wrong medication, he was given bologna sandwiches to eat to keep his blood sugar from going too low. (ECF No. 19, p. 11). Ten minutes after the injection of the incorrect medication Plaintiff's blood sugar was 180 mg/dl. (ECF No. 41-5, 41-5 p. 23). Thirty minutes after the injection Plaintiff's blood sugar was 187 mg/dl. *Id.* Even though Plaintiff's blood sugar never reached a critical level he was transported to the WRMC for evaluation. (ECF No. 41-4, 41-5 pp. 23-26).

On March 30, 2018, Plaintiff sent a request addressed to Defendant Walker requesting a face to face meeting "in regards to the evolution of my medical care in your jail…to address…another trip to the hospital that obviously could have been prevented and certainly could have been life threatening…" (ECF No. 37-3 p. 2).

On April 3, 2018, Plaintiff submitted a grievance stating:

This grievance is to formally put a complaint against the inconsistencies of the medical applications of the facility and the callous intimidating tactics of Nurse King in regards to the personal treatment here and what he decides versus what the doctors have instructed at the hospital. The lack of access to my own personal information in regards to my treatment in this facility and the fact that although I have 'labeled' with my name medication, I'm still getting someone else's and other infract.

(ECF No. 37-3 p. 3). The next day, the responding officer forwarded Plaintiff's requests to the appropriate authority.

On May 7, 2018, Plaintiff submitted a grievance stating:

Up was discovered. I was taken to R&D for observation and given 6 bologna sandwichs. Lonnie returned to R&D moments later to inform me that I would be taking yet another preventable trip to thr E.R. as earlier in the month I had taken 3 embarassing trips to the E.R. handcuffed, chained and shackeled in what was another obviously avoidable debagel in less than a 24 hour period. The attending physician at the E.R. pointed out several discrepancies including but not limited Lonnie drawing the insulin.

5

(ECF No. 37-3 p. 6).  In response Defendant King stated, "I have acknowledged receipt of the complaint." *Id.*

That same day Plaintiff submitted a second grievance stating:

Then giving me the syringe without identifying the meds. The immediate adverse effects have been to my eyesight and stopping the dripping at the end of my bladder evacuation. I now have difficulties with my injections as I am extremely apprehensive of taking the wrong shot.  I have no clue of future mental, physical or emotional impairments this will have on my quality or longevity of life.

(ECF No. 37-3 p. 7).  Again, Defendant King responded stating, "I have acknowledged receipt of the complaint." *Id.*

Plaintiff submitted a third grievance on May 7, 2018 stating:

This grievance has been generated in regards to the 20 units/cc of Humulin fast acting insulin that I was given on the evening of 3-28-18 instead of the slow acting Lantus that should have been administered and the psyical & psychological ramafications that have insued from said trauma.  L.VN. Lonnie Redfearn drew up the Humulin in the syringe and handed it to me. I did the injection in my lower abdomen. As the next diabetic prisner was about to take his injection it was at that time the insulin mix.

(ECF No. 37-3 p. 8).  Defendant King again acknowledged receipt of the complaint.  *Id.*

On May 14, 2018, Plaintiff was accused of theft after an excessive amount of alcohol pads were found in his property during a shake down.  Plaintiff appeared at his hearing and accepted the sanction that was offered to him – 30 days loss of commissary.  (ECF No. 37-5 pp. 1-6).

On June 5, 2018, Plaintiff submitted a medical request stating, "I need the nurse to evaluate the condition of my lower left jaw and upper righ[t] molar tooth to direct me on what needs to happen as it has swollen and is sore also making it hard to chew. Thank you." (ECF No. 37-3 p. 33).  The record reflects this request was read by Defendant Foster, a nurse employed by Defendant Southern Health Partners, Inc.  *Id.*  Defendant King examined Plaintiff's mouth and told him he

had an abscess tooth.  He then gave Plaintiff three pills and told him to put in a sick call for that evening.  (ECF No. 48 p. 6).  Later that day, Plaintiff submitted another medical request stating, "The medicine that Nurse King gave me for pain has worn off and I was suppose to start on an antibiotic this evening so I can have a tooth removed Saturday…My pain is an excruciating 10…" (ECF No. 37-3 p. 34).

During evening pill call on June 5, 2018, Plaintiff was cited for disrespectful behavior toward an MCDC staff member when he allegedly called a jailer "jackass" and was taken to lockdown.  Although he denied saying the word, Plaintiff appeared at his disciplinary hearing and accepted the sanction of 15 days in lockdown.  (ECF No. 37-5 pp. 8-13).  According to the affidavit of Defendant Foster, Plaintiff refused his sick call at that time.  (ECF Nos. 41-3 p. 2).  Plaintiff specifically disputes this statement.  (ECF No. 50 p. 3).  There is no dispute Plaintiff did not receive any pain medication on the evening of June 5, 2018, before or after he was moved to lockdown. *Id.*

According to the affidavits of Defendants King, Foster and Redfearn, Plaintiff did not make any requests, either verbal or written, for pain medication between June 6 and June 9, 2018.  (ECF No. 41-1 p. 2, 41-3 p. 2, 41-4 p. 2).  Plaintiff specifically disputes this and states, "I never refused medication.  I was given a refusal and requested medication daily."  (ECF No. 50).  He also states, "I was harshly admonished by Nurse S. King on the morning of 6-6-18 and when I asked him for pain medication he told me to put in a request on the kiosk…I lost kiosk privileges as part of my punishment."  *Id.* at p. 8.

Defendant Foster states in her affidavit, "Inmates placed in administrative segregation can submit a sick call through the kiosk or by submitting a paper request."  Plaintiff disputes this statement in part and claims the kiosk was not turned on during his time in lockdown.  (ECF No.

50 p. 3).

On June 9, 2018, Plaintiff was prescribed 800 mg Ibuprofen twice daily for seven days after a tooth extraction.  (ECF Nos. 41-1 p. 2, 41-5 p. 29).  Plaintiff continued to receive this medication twice daily from June 10, 2018, through June 16, 2018.  *Id.*

On June 30, 2018, Plaintiff submitted a medical request stating:

> Nurse Chelsea just threatened to put me in a turtle suit because I'm trying to harm myself…my rest was broken last night do to some people that did not go to sleep until early this morning. I'm always up early and on time for pill call. I'm certain this is another unprovoked attack to entice a respond for retaliation. I've been here 7 months, she said this was the 2nd time. I don't remember the 1st time but twice in 7 months wow."

(ECF No. 37-3 p. 10).  In response Defendant King stated:

> Diabetics have, in the past, used refusals for their medication as self-harm. You are on 3 long term medications and receive two different insulins Mr. Lowery.  We take any diabetic medication refusal seriously at Miller County Detention Center. Your safety, and the safety of those around you, are our top priority. Any expression/sign of self-harm is taken seriously and dictates appropriate actions by staff.

*Id.*

According to the affidavit of Defendant Foster, on July 2, 2018, Plaintiff did not line up for pill pass "making that more than three days in a row that he failed to line up."  (ECF No. 41-3 p. 3).  Plaintiff was placed in lockdown by Officer Johnson due to his failure to line up for pill pass for diabetic medications.  Defendant Foster states she explained to Plaintiff how important it was for him to take his diabetic medications.  *Id.*  Plaintiff disputes this and simply says, "Not true and verifiable with multiple witnesses…"  (ECF No. 50 p. 3).

On July 26, 2019, Plaintiff submitted a grievance stating:

> As a plaintiff in a case against a facility in which I'm incarcerated, I find it uncomfortable and unprofessional, while checking my blood sugar @ or about

8

> 11:20A.M. to be addressed, laughed at, and reassured by Nurse King that the case
> I filed would be thrown out and not to take it personally. I'm afraid to and have no
> idea how to respond without the presence of legal representation.

(ECF No. 37-3 p. 14).   The responding officer stated, "We take allegations such as the one you

have made very seriously…disciplinary action will be taken against you if it is found that you have

made false allegations. We also want to assure you that if necessary, appropriate measures will be

taken to address your concerns."  *Id.*

On July 27, 2019, Plaintiff submitted a grievance stating:

> It is my prayer that somehow Nurse King could curb his intimidating and taunting
> tactics in regards to staying in the parameters of his obligations and duties
> concerning any interactions we may incur throughout the duration of my
> incarceration under his medical guidance as this morning once again he was
> intimidating and condescending in front of fellow prisoners that unlike in the
> infirmary yesterday, are willing and ready to serve as witnesses to the behavior @
> 6:30 pill call please view tapes.

(ECF No. 37-3 p. 15).   Three days later Plaintiff's request was forwarded to the appropriate

authority.  *Id.*

On July 27, 2018, Plaintiff submitted a second grievance stating:

> Nurse King has harassed me again in the infirmary and it carried on into the
> hallway. This was at approximately 11:30A.M. with the same guard that it
> happened in front of yesterday C.O. Moore. I've been told that personel has to stick
> together so I don't know if Moore will admit to any of yesterday but today was
> partially played out in the hallway and if mics are available that will render it hard
> to deny in spite of the fraternal bond. Can someone please help.

(ECF No. 37-3 p. 16).   Three days later the responding officer stated, "Your request is ambiguous

and contains no identifiable request or complaint.  We suggest that you be more specific so that

we may address whatever is concerning you."  *Id.*

In his affidavit Defendant King states, "At no time, either before or after Mr. Lowery filed

the present lawsuit, did I attempt to intimidate him.  However, during one instance after learning about the lawsuit, I laughed out loud and told Mr. Lowery, 'I don't take these lawsuits personally.  Good luck.'"  (ECF No. 41- p. 3).

On March 15, 2019, Plaintiff gave his sworn testimony in a deposition.  (ECF No. 37-7 pp. 1-103).

At all times relevant, Defendant Southern Health Partners, Inc. was under contract with Miller County, Arkansas, to provide healthcare services to inmates housed at the MCDC.  (ECF Nos. 41-1, 41-2, 41-3, 41-4).   At all times relevant, Defendants Reynolds, King, Foster and Redfearn were employees or agents of Defendant Southern Health Partners, Inc.  *Id.*  With the exception of Defendant Reynolds, none of these Defendants were authorized to prescribe, discontinue or change the dosages of medications.  *Id.*  In addition, none of these Defendants had authority to place inmates in disciplinary administrative segregation.  *Id.*

Defendant Steven King states in his affidavit he administered medications and performed blood sugar checks on Plaintiff as prescribed, he never refused to administer medications prescribed for Plaintiff, he did not deny Plaintiff proper medical attention, and did not retaliate or take any other adverse action against Plaintiff for any reason.  (ECF No. 41-1 p. 2).  He also states he was never deliberately indifferent to Plaintiff's medical needs and no policy or custom of Southern Health Partners, Inc. was "unconstitutional or exhibited deliberate indifference to Plaintiff's medical needs."  *Id.* at p. 3.

Defendant Reynolds states in his affidavit he was never deliberately indifferent to Plaintiff's medical needs.  (ECF No. 41-2 p. 3).

Defendant Foster states in her affidavit she was not deliberately indifferent to Plaintiff's medical needs, she did not retaliate or take any other adverse action against Plaintiff for any reason,

and she provided Plaintiff with appropriate and timely nursing care.  (ECF No. 41-3 p. 3).

Defendant Redfearn states in her affidavit she did not deny Plaintiff proper medical attention or refuse to administer medications prescribed for him, she was not deliberately indifferent to Plaintiff's medical needs, and did not retaliate or take any other adverse action against Plaintiff for any reason.  (ECF No. 41-4 p. 2).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his verified Complaint on July 18, 2018, against Defendants Walker, King, Foster, Redfearn, Reynolds, Runion, and Southern Health Partners, Inc.  (ECF No. 1).  In response to this Court's order, Plaintiff filed an Amended Complaint on October 3, 2018.  (ECF No. 19). He is suing Defendants in both their personal and official capacities and is seeking compensatory and punitive damages.  *Id.* at p. 16).  He also asks for "a practical diet to enhance proper medical care at the facility and institute a personal program for insulin that inmates may more easily & safely accentuate/acclaimate."  *Id.*

In Claim One, Plaintiff identifies Defendants King, Foster, Redfearn, Reynolds, and Southern Health Partners, Inc. as the responsible parties and then describes the events of March 9 - 10, 2018, when he was taken to the local emergency room on three occasions because of irregularities with his blood sugar.  (ECF No. 19 p. 6).  Plaintiff also states, "Retaliation plays a huge part here. I went to infirmary on 6-5-18 with a toothache and got pills for pain and infection that morning.  When I went back that evening I had words with a C.O.   I was put in the hole until 6-9-18, when the dentist came without further meds until after the tooth was pulled…"  (ECF No. 19 p. 8).  Plaintiff also claims he was denied adequate medical care because he was never seen by a doctor at the MCDC, he was taken off his diabetic medication Lantus, and his blood sugar checks were reduced from twice daily to once a week.  *Id.*   As for his official capacity claim under Claim

11

One, Plaintiff describes the custom or policy he believed caused a violation of his constitutional rights as, "…the lack of attention to my very apparent worsening numbers on the glucose meter and failing to act or respond." *Id.* at p. 10.

In Claim Two, Plaintiff names Defendants King, Foster, Redfearn, Reynolds, and Southern Health Partners, Inc. and describes the claim as "Negligent application & Care-Deliberate Indifference." (ECF No. 19 p. 10). Plaintiff goes on to describe how he was given the wrong dose of insulin by Defendant Redfearn on March 28, 2018. *Id.* at pp. 10-12. Other than listing them as responsible parties, Plaintiff does not specifically mention Defendants King, Foster, Reynolds or Southern Health Partners, Inc. in this claim.

Plaintiff also mention retaliation under Claim Two and states "…the intimidating and retaliatory tactics applied has not only affected my physical body in many adverse ways, but has torn me down mentally and emotionally. (ECF No. 19 p. 12). During his deposition, Plaintiff testified Defendants King and Foster retaliated against him for filing the instant lawsuit and several grievances against them. (ECF No. 41-8 p. 29). Specifically, Plaintiff alleges King and Foster retaliated against him when they placed him in administrative segregation. (ECF No. 41-8 pp. 21-24, 29). He also testified Defendant King attempted to intimidate him after he filed the lawsuit by harassing him verbally on several occasions by making comments about the lawsuit. (ECF No. 41-8 pp. 21-26). Construing Plaintiff's Amended Complaint in the most liberal sense, the Court will consider and address Plaintiff's claims of retaliation.[5]

For his official capacity claim in Claim Two, Plaintiff describes the custom or policy that he believed caused a violation of his constitutional rights as, "…the lack of adherence to any

---

[5] The Court notes Defendants have not argued these claims are not properly before the Court.

established policy is the direct violation to what could be life threatening in this scenario." *Id.* at p. 13.[6]

On May 13, 2019, Defendants Southern Health Partners, Inc., Reynolds, King, Foster, and Redfearn filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) they were not deliberately indifferent to Plaintiff's medical needs; 2) they did not retaliate against Plaintiff; and 3) there is no basis for official capacity/county liability. (ECF No. 41).

On July 19, 2019, Plaintiff filed a verified Response in opposition to Defendants' motion. (ECF No. 48). Plaintiff argues Defendants' motion "does not accurately represent the facts". *Id.* at p. 2. He also claims he was never aware of anyone named Steven Foltz and had no idea he was involved in his medical care.[7] *Id.* Plaintiff goes on to discuss his medical records, various medical policies of Defendant Miller County, and raises issues not addressed in his Amended Complaint (i.e. sharing of insulin, inadequate responses to grievances). However, Plaintiff states on June 5, 2018, Defendant King looked in his mouth and told him he had an abscess tooth, gave him pain medication and told him to file a sick call for the evening of June 5, 2018. Plaintiff goes on to state while being escorted to lockdown for an alleged rule violation, he "pleaded [for pain medication] but Nurse Chelsea informed me that if you have a disciplinary problem in the infirmary you receive an automatic refusal [to take meds]." (ECF No. 48 pp. 6-7). Plaintiff states he did not refuse his pain medication. *Id.* In addition, Plaintiff states, "I was harshly admonished by Nurse S. King on the morning of 6-6-18 and when I asked him for pain medication he told me

---

[6] Plaintiff also alleges a third claim against Defendants Miller County, Walker and Runion concerning an inadequate diet for diabetics at the MCDC. Plaintiff does not make any allegations against the medical defendants in this claim.
[7] On July 19, 2019, Plaintiff filed a motion to add Mr. Foltz as a defendant. (ECF No. 49). The Court denied Plaintiff's motion on July 24, 2019, as untimely and noted Plaintiff had been provided discovery which identified Mr. Foltz as the Nurse Practitioner. (ECF No. 53).

to put in a request on the kiosk…I lost kiosk privileges as part of my punishment." *Id.* at p. 8.

On July 22, 2019, Plaintiff filed a verified "Response to Undisputed Facts 37-40". (ECF No. 50). In this Response Plaintiff lists a numeral taken from Defendant's Statement of Facts (ECF No. 40) and makes the following notations: "32. I never refused medication, I was given a refusal and requested medication daily. I accepted sanction and denied allegation.; 33. Kiosk was not turned on.; 36. Not true and verifiable with multiple witnesses...; and 37. Jail Staff was fully aware of preparation of lawsuit after meeting on 3-30-18 with Ward and Captain."

Number 32 is in response to Defendants King and Foster's statements concerning Plaintiff's refusal of medication. Number 33 is in response to the statement that inmates placed in administrative segregation can submit a sick call through the kiosk or by submitting a paper request. Number 36 relates to the Defendants' statement of fact that Plaintiff did not line up for pill pass on July 2, 2019 "making that more than three days in a row that he failed to line up…" Number 37 is in response to Defendants statement that any allege actions or inactions that occurred prior to July 18, 2018 – the date Plaintiff filed the instant lawsuit – could not form the basis of a retaliation claim.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.  DISCUSSION

### A.  Denial of Medical Care

Plaintiff alleges he was denied medical care when one of his medications for diabetes was discontinued for a few weeks, his blood sugar checks were reduced to once a week, he was not provided pain medication for several days for an abscess tooth, and he was never examined by a physician while he was in the MCDC. He also claims Defendant Redfearn – a nurse employed by Defendant Southern Health Partners, Inc. - was negligent when she administered the wrong insulin on one occasion.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106

(1976).   The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).   To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.   Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).   A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).   However, intentionally denying or delaying access to medical care may constitute deliberate indifference.   *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

Defendants do not dispute Plaintiff's medical issues relating to his diabetes or his dental care are serious medical needs.   Therefore, for purposes of this Report and Recommendation the Court will assume Plaintiff's conditions as described in his Amended Complaint are serious medical needs.   However, Defendants argue they were not deliberately indifferent to Plaintiff's medical needs.   The Court will address each of Plaintiff's claims separately.

16

### 1.  Discontinuance of Lantus and Reduction of Blood Sugar Checks

Plaintiff alleges Defendants Southern Health Partners, Inc., Reynolds, King, Foster and Redfearn were deliberately indifferent to his medical needs when one of his mediations for diabetes – Lantus – was discontinued for a few weeks and his twice daily blood sugar checks were reduced to once a week.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

The summary judgment record reveals on December 31, 2017, Nurse Practitioner Steven Foltz made the decision to discontinue Plaintiff's Lantus and later reduced the twice daily blood sugar checks based on the medical evidence indicating Plaintiff's blood sugar was under control.  At the time these decisions were made by Steven Foltz, Plaintiff was still on the medication Metformin for his diabetes.  The summary judgment record also confirms Defendants King, Foster and Redfearn and Reynolds had no part in Foltz's decision to discontinue the Lantus or reduce Plaintiff's blood sugar checks.  As previously mentioned, neither Defendant King, Foster or Redfearn were authorized to prescribe, discontinue or change the dosages of medications.  As for Defendant Reynolds, he states in his affidavit he did not make the decision to discontinue Plaintiff's Lantus or reduce the blood sugar checks.  Nevertheless, Defendant Reynolds goes on to state he believes the decisions to discontinue Plaintiff's Lantus and reduce the blood sugar checks were sound and based on the medical evidence that existed at the time the decisions were made.

17

Because Defendants King, Foster and Redfearn were not personally involved in the decision to discontinue Plaintiff's diabetic medication – Lantus - or reduce the number of his blood sugar checks, Plaintiff's claims against them fail as a matter of law.   Although Defendant Reynolds was not personally involved it is possible, he could have had some responsibility for Nurse Practitioner Foltz's decision because he was the physician in charge.   This matters not because Defendant Reynolds submitted an affidavit stating he believed the decision to discontinue Lantus and reduce Plaintiff's blood sugar checks was medically sound based on the medical evidence at that time.   Plaintiff has offered no summary judgment evidence placing these facts in dispute. Plaintiff's disagreement with this treatment does not establish deliberate indifference by Defendant Reynolds.   Accordingly, Plaintiff's claims against Defendant Reynolds also fail.

### 2.  Denial of Pain Medication

Plaintiff alleges Defendants denied him pain medication for a toothache beginning on June 5 until June 9, 2018, when his tooth was extracted.

As previously stated, deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care.  *Estelle*, 429 U.S. at 105.   Moreover, when an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow.  *See Foulks v. Cole Cnty. Mo.*, 991 F.2d 454 (8th Cir. 1993) (liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain).

The summary judgment record reveals on June 5, 2018, Plaintiff submitted a medical request stating, "I need the nurse to evaluate the condition of my lower left jaw and upper righ[t] molar tooth to direct me on what needs to happen as it has swollen and is sore also making it hard to chew. Thank you."  (ECF No. 37-3 p. 33).   The record reflects this request was read by

18

Defendant Foster and Defendant King then looked in Plaintiff's mouth, told him he had an abscess tooth, gave him pain medication, and told him to file a sick call for that evening.  Later that day, Plaintiff submitted another medical request stating, "The medicine that Nurse King gave me for pain has worn off and I was suppose to start on an antibiotic this evening so I can have a tooth removed Saturday…My pain is an excruciating 10…"  (ECF No. 37-3 p. 34).

During evening pill call on June 5, 2018, Plaintiff was cited for disrespectful behavior toward an MCDC staff member and was taken to lockdown.  According to the affidavit of Defendant Foster, Plaintiff refused his sick call at that time.  (ECF Nos. 41-3 p. 2).  According to the affidavits of Defendants King, Foster and Redfearn, Plaintiff did not make any requests, either verbal or written, for pain medication between June 6 and June 9, 2018.  (ECF No. 41-1 p. 2, 41-3 p. 2, 41-4 p. 2).  The summary judgment record substantiates there were no written requests made by Plaintiff for pain medication during this time.  However, Plaintiff specifically disputes these statements and submitted a verified Response stating, "I never refused medication.  I was given a refusal and requested medication daily."  (ECF No. 50 p. 3).   He also states he pleaded with Defendant Foster to give him pain medication on the evening of June 5, 2018, and she refused because he was given a disciplinary in the infirmary.  (ECF No. 48 p. 7).  Moreover, Plaintiff states, "I was harshly admonished by Nurse S. King on the morning of 6-6-18 and when I asked him for pain medication he told me to put in a request on the kiosk…I lost kiosk privileges as part of my punishment."  *Id.* at p. 8.

Defendant Foster states in her affidavit, "Inmates placed in administrative segregation can submit a sick call through the kiosk or by submitting a paper request."  Plaintiff disputes this statement in part and claims the kiosk was not turned on during his time in lockdown.  (ECF No. 50 p. 3).  He also states he lost his access to the kiosk when he was moved to lockdown.  (ECF

19

No. 48 p. 8).  There is no dispute on June 9, 2018, Plaintiff was prescribed 800 mg Ibuprofen twice daily for seven days after his tooth was extracted.  Plaintiff continued to receive this medication twice daily from June 10, 2018, through June 16, 2018.

The Court finds there is no summary judgment evidence to support a claim against Defendants Southern Health Partners, Reynolds, or Redfearn for denying Plaintiff pain medication between June 5 and June 9, 2018.  Accordingly, Plaintiff's claim for denial of medication against these Defendants fails as a matter of law.

However, the Court finds there are questions of material fact as to whether Defendants King and Foster denied Plaintiff's requests for pain medication between June 5 and June 9, 2018.  Accordingly, the Court recommends summary judgment be denied on these claims.

### 3.  Lack of Evaluation by a Physician at the MCDC

Plaintiff alleges he was denied medical care because he was never seen by Defendant Reynolds or any other physician employed by Defendant Southern Health Partners, Inc., while he was incarcerated in the MCDC.

Although Plaintiff has a constitutional right to adequate health care, he does not have the right to health care of his choice.  *See Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118-19 (an inmate has no constitutional right to a particular course of treatment).  The summary judgment record includes close to fifty (50) pages of medical records documenting Plaintiff's medical care and treatment during his time in the MCDC.  Plaintiff received medical examinations and care on a very regular basis even if they were not conducted by a physician.   The record also confirms Plaintiff was provided regular blood sugar tests, medication for his diabetes, and was immediately transported to the WRMC emergency four different times when Plaintiff's blood sugar registered levels Defendants determined necessitated emergency care.  After each trip to the

emergency room, Defendant Reynolds or Nurse Practitioner Foltz ordered the medication and treatment recommended by the emergency room physician.  As previously stated, Plaintiff's disagreement with his treatment does not state a constitutional claim.

In addition, courts "hesitate to find an [E]ighth [A]mendment violation when a prison inmate has received medical care." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).  On the facts presented here, the Court concludes while Plaintiff did not receive the care from Defendants he may have wanted, the care he received was constitutionally sufficient.  *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (Eighth Amendment does not require that prisoners receive "unqualified access to health care"); *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) ("[I] is not constitutionally required that" care be "perfect, the best obtainable, or even very good.") (citation omitted); *Schaub v. VonWald,* 638 F.3d 905, 935 (8th Cir. 2011) (Beam, J., dissenting) ("[I]nmates are only entitled to adequate medical care, not the best care possible.") (internal quotation marks and citation omitted).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims he was denied adequate medical care because he was not evaluated by a physician at the MCDC.

### 4.  Administration of Incorrect Medication

Plaintiff alleges he was denied medical care when he was given the wrong medication on one occasion at the MCDC.  The summary judgment record confirms Plaintiff was inadvertently administered 20 units of regular insulin rather than his 20 units of Lantus by Defendant Redfearn on March 28, 2018.  The record also confirms none of the other Defendants were involved in this incident.

In her affidavit, Defendant Redfearn states, "At no time did I intentionally administer medications to Mr. Lowery that were not prescribed for him."  (ECF No. 41-4 p. 2).  Plaintiff also

testified during his deposition he believes this incident was negligence. (ECF No. 41-8 p. 7). The law is well settled in order to establish deliberate indifference, Plaintiff must show more than negligence or even gross negligence. *See Popoalii*, 512 F.2d at 499; *McClain v. Howard*, 2015 WL 6123063, \*9 (W.D. Ark. Sept. 21, 2015) (finding that giving an inmate the wrong medication on occasion at most supports a finding the officer was negligent). Accordingly, Plaintiff's claim he was denied medical care when Defendant Redfearn negligently administered the wrong medication fails as a matter of law.

### B. Retaliation

Plaintiff alleges he was placed in "the hole" for filing the instant lawsuit and filing grievances. He also claims Defendant King retaliated against him for filing the lawsuit by verbally harassing and intimidating him on several occasions.

The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity. *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994). Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon*, 38 F.3d at 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St.*

*Louis, Mo.,* 673 F.3d 799, 807-808 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Retaliation claims fail "if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). Therefore, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Id.* "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id.* at 831.

The Eighth Circuit has reviewed and upheld the dismissal of a plaintiff's complaint that alleged retaliation for filing grievances. In *Orebaugh v. Caspari*, 910 F.2d 526 (8th Cir. 1990), the Court determined although the plaintiff claimed he was disciplined in retaliation for filing a grievance, the claim failed because the plaintiff violated the prison's rules for a few different incidents, including one where the plaintiff got into a scuffle with another inmate. The Court found "[o]ne officer's testimony was sufficient to constitute some evidence" the plaintiff violated the prison's rules by scuffling with another inmate. *Id.*

Here, Plaintiff's claim he was placed in the "hole" for filing grievances is contrary to the facts. On June 5, 2018, Plaintiff was cited for disrespectful behavior for allegedly calling a jailer "jackass". Although he denied saying the word, Plaintiff appeared at his disciplinary hearing and accepted the sanction of 15 days lockdown. The summary judgment record establishes the disciplinary action taken against Plaintiff resulted from Plaintiff's own misconduct and violation of the MCDC's rules. Accordingly, Plaintiff's claim for retaliation set forth under Claim One of the Amended Complaint fails as a matter of law.

As for Plaintiff's retaliation under Claim Two, Defendant King denies he ever attempted to intimidate or harass Plaintiff but does admit on one occasion after he learned about the lawsuit, he "laughed out loud and told Mr. Lowery, 'I don't take these lawsuits personally. Good luck." (ECF No. 41-1, p. 3). The Court finds while perhaps unprofessional, simply mentioning Plaintiff's lawsuit without any action adversely affecting Plaintiff does not constitute retaliation. Plaintiff has not provided summary judgment evidence of retaliation but only makes conclusory allegations against him. This is insufficient as a matter of law. *See Meuir,* 487 F.3d at 1119 ("Merely alleging that an act was retaliatory is insufficient.").

Accordingly, Plaintiff's individual capacity claims for retaliation fail as a matter of law and Defendants Southern Health Partners, Inc., King, Foster, Reynolds, and Redfearn should be granted summary judgment on these claims.

### C. Official Capacity Claims

Plaintiff also sues Defendants Southern Health Partners, Inc., King, Foster, Reynolds, and Redfearn in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). Here, Miller County contracted with Defendant Southern Health Partners, Inc., to provide medical care to the inmates in the MCDC.

When a government contracts with a third-party to fulfill a constitutional duty – such as providing medical care - official-capacity claims against the third-party's employees are treated as claims against the third-party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1-*2 (W.D. Ark. Aug. 18, 2016) (finding that official-capacity claims against employees of a third party medical provider are treated as claims against the company because Benton County contracted with the company to provide healthcare to County prisoners"). To sustain an official-capacity

24

claim against such an entity a plaintiff "must show that there was a policy custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a § 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."). Thus, Plaintiff's official-capacity claims against Defendants King, Foster, Reynolds and Redfearn are "functionally equivalent" to alleging their employer, Southern Health Partners, Inc., had "a policy, custom, or [took an] official action" that deprived him of constitutionally adequate medical care. *Veatch,* 627 F.3d at 1275*; Johnson,* 452 F.3d at 973.

Plaintiff describes his official capacity claims under Claim One as "the lack of attention to my very apparent worsening numbers on the glucose meter and failing to act or respond." In Claim Two Plaintiff describes his official capacity claim as "lack of adherence to any established policy is the direct violation to what could be life threatened in this scenario." However, Plaintiff does not identify any specific policy or custom of Defendant Southern Health Partners Inc. that violated his rights under either claim. Merely alleging Defendants violated his constitutional rights or failed to adhere to "established policy" does not state a constitutional claim. *Walton v. Dawson*, 752 F.3d 1109 (8th Cir. 2014); *Edwards v. Baer*, 863 F.3d 606, 608 (8th Cir. 1988).

Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

## V. CONCLUSION

For the reasons stated above, I recommend Defendants' Motion for Summary Judgment (ECF No. 39) be **GRANTED IN PART and DENIED IN PART.**

I recommend Defendants' Motion for Summary Judgment (ECF No. 39) be **GRANTED** on the following claims: 1) all official capacity claims against all Defendants; 2) all individual capacity claims against Defendants Southern Health Partners, Inc., Reynolds, and Redfearn; and 3) individual capacity claims against Defendants King and Foster for discontinuing Plaintiff's medication and reducing his blood sugar checks, lack of evaluation by a physician at the MCDC, administration of incorrect medication, and retaliation.   I recommend these claims be **DISMISSED WITH PREJUDICE.**

I recommend Defendants' Motion for Summary Judgment (ECF No. 39) be **DENIED** as to Plaintiff's individual capacity claims against Defendants King and Foster based on Plaintiff's claim he was denied pain medication between June 5 and June 9, 2018.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 30th day of September 2019.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE